IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH HURLEY, KAREN G. WRIGHT, and STEPHEN WRIGHT, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 05-826-SLR ) |
| RUTH ANN MINNER, M. JANE BRADY, and JOHN CORDREY, | ) ) ) |
| Defendants. | ) |

James R. Folsom, Esquire, Wilmington, Delaware.  Counsel for
Plaintiffs.  Of Counsel:  James A. Tanford, Esquire, Indiana
University School of Law, Bloomington, Indiana; and Robert
Epstein, Esquire, Epstein Cohen Donahoe & Mendes, Indianapolis,
Indiana.

Laura L. Gerard, Esquire, Department of Justice, State of
Delaware, Wilmington, Delaware.  Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: September ∂⁶, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On December 2, 2005, Joseph Hurley ("Hurley"), as an individual, and Karen and Stephen Wright ("the Wrights"), on behalf of their company Wright Wine Works ("Wine Works") (collectively, "plaintiffs"), filed a complaint against Governor Ruth Ann Minner ("Minner"), Attorney General M. Jane Brady ("Brady"), and Delaware Alcoholic Beverage Control Commissioner John Cordrey ("Cordrey"), all officials of the State of Delaware. (D.I. 1)   Plaintiffs' amended complaint alleges a violation of their civil rights under 42 U.S.C. § 1983 and seeks a declaratory judgment that, because certain sections of the Delaware Code[1] violate the Commerce Clause of the United States Constitution, U.S. CONST. art. 1, § 8, cl. 3, plaintiffs have been deprived of their right to engage in interstate commerce.   (D.I. 4 at 1-2) They allege two different violations:   "[D]iscrimination against out-of-state wineries with respect to consumers" (count I), and "discrimination against out-of-state wineries with respect to sales to licensed retail wine sellers" (count II).   (Id. at 3, 5) Plaintiffs request an injunction barring the enforcement of the challenged statutes, which regulate the ability of out-of-state wineries to ship alcoholic beverages into Delaware.   (Id. at 2)

---

[1]Specifically, plaintiffs challenge 4 Del. C. §§ 501(a), (d), (f); §§ 526(a), (b), (c), (e); § 701; and § 703, as well as 4 Del. Admin. C. §§ 8, 8.1, 77.

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), and lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), on January 20, 2006.  (D.I. 5)  They argued that:  1) Minner and Brady are not proper parties to the action; 2) plaintiffs lack standing and their claim is not ripe for adjudication; and 3) the relief sought by plaintiffs potentially exceeds the subject matter jurisdiction of this court.  (D.I. 6) Subsequently, defendants filed a motion to stay the proceedings pending the resolution of a bill then before the state legislature.  (D.I. 7)

On August 25, 2006, the parties stipulated that both count II of the complaint and the motion for a stay are now moot because the legislation in question, H.B. 336, has become law. (D.I. 12)  Likewise, plaintiffs agreed to drop their claims against Minner and Brady, leaving Cordrey as the sole remaining defendant ("defendant").  (Id.)  The court has jurisdiction over the remainder of this action, count I of the complaint, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and has the power to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

## II.  BACKGROUND

Joseph Hurley, a Delaware citizen, is over the age of twenty-one and is legally allowed to purchase, possess, and consume alcoholic beverages.  (D.I. 4 at ¶ 6)  The Wrights are

2

the owners of Wine Works, a Pennsylvania winery which possesses the necessary permits to ship wine through interstate commerce. (Id. at ¶ 7)  Hurley, a wine enthusiast, wishes to buy wine from out-of-state wineries, including Wine Works, and have it shipped to his home in Delaware; Wine Works and the Wrights wish to sell and ship their wine to residents of Delaware such as Hurley. (Id. at ¶¶ 6-7)  The remaining defendant, John Cordrey, is the Delaware Alcoholic Beverage Control Commissioner, head of the department charged with regulating the creation, distribution, and consumption of alcoholic beverages in Delaware.  (Id. at ¶ 12)  According to plaintiffs, defendant acts under color of state law when enforcing the statutes and regulations challenged in the complaint.  (Id. at ¶ 13)

Under 4 Del. C. § 512A, wineries may apply to the State of Delaware for a farm winery license, which would permit them "to manufacture, ferment, blend, age, store and bottle wine containing 14 percent or less of ethyl alcohol by volume on the[ir] premises."  Id. § 512A(a).  "A farm winery licensee [is] authorized to store and sell wine on the premises . . . for consumption on or off the premises where sold."  Id. § 512A(b).  Delaware law also provides that, with certain restrictions, "a Delaware resident may purchase [wine] and beer that is not readily available to consumers throughout the State directly from a manufacturer or retailer of such beverages domiciled outside of

3

Delaware." <u>Id.</u> § 526(a). Under Delaware law, "[n]o manufacturer or importer shall sell, ship, transport or deliver wine or beer within this State to any person unless in accordance with the published regulations of the Commissioner." <u>Id.</u> § 703.

Any out-of-state seller who wishes to take direct orders (over the internet or telephone or through the mail) from people in Delaware may do so after obtaining a direct shipper license; however, "[u]nder no circumstance may the wine or beer be shipped directly to the resident." <u>Id.</u> § 526(b), (e); <u>see also id.</u> §§ 501(a), 501(d), 701. Instead, the shipment must be sent through a Delaware wholesaler to a Delaware retailer and then picked up by the customer, who must show proof of age. <u>Id.</u> §§ 526(e); 4 Del. Admin. C. 077. Out-of-state importers must pay fees and taxes on, as well as provide documentation for, their shipments. 4 Del. Admin. C. 008.[2]

Plaintiffs seek a declaratory judgment that the challenged statutes and administrative regulations are unconstitutional, an injunction allowing them to deliver wine directly to residents of Delaware, costs and expenses, and any other relief the court deems appropriate. (<u>Id.</u> at 5-6) Defendant has moved to dismiss. (D.I. 5)

---

[2]Plaintiffs state, however, that they "do not request that the State be enjoined from collecting any tax due on the sale of wine." (D.I. 4 at 6)

4

## III.  STANDARD OF REVIEW

### A. Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  There are two types of Rule 12(b)(1) motions.  The first type, a facial attack, challenges the complaint on its face.  The second type attacks the existence of subject matter jurisdiction in fact.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Where a defendant has not filed an answer to the complaint, as in the instant case, the attack on subject matter jurisdiction is necessarily considered a facial attack.  Under this type of analysis, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Id.  Dismissal for a facial challenge is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'"  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

The ripeness doctrine is meant to prevent a court from prematurely adjudicating an issue:  "[It] is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  Reno v. Catholic

Social Servs., Inc., 509 U.S. 43, 58 n.18 (1993). The Third
Circuit enunciated a three part ripeness test in Step-Saver Data
System, Inc. v. Wyse Technology, 912 F.2d 643 (3d Cir. 1990).
Under the Step-Saver test, the court should look at: 1) "the
adversity of the interest of the parties"; 2) "the conclusiveness
of the judicial judgment"; and 3) "the practical help, or
utility, of that judgment." Id. at 647 (citation omitted).
While the Supreme Court has previously recognized a seemingly
different two part test,[3] the Third Circuit has stated that
"[o]ur refinement simply alters the headings under which various
factors are grouped, and since Step-Saver, we have employed both
tests." Phil. Federation of Teachers, Am. Federation of
Teachers, Local 3, AFL-CIO v. Ridge, 150 F.3d 319, 323 n.4 (3d
Cir. 1998) (citations omitted).

Standing has been defined by the United States Supreme Court
as "whether the litigant is entitled to have the court decide the
merits of a dispute or of particular issues." Warth v. Seldin,
422 U.S. 490, 498 (1975). It is a "threshold issue in every
federal case, determining the power of the court to entertain the
suit." Id. The Supreme Court has announced three requirements

---

[3]The Supreme Court's two-prong test evaluates: (1) "the
fitness of the issues for judicial decision"; and (2) "the
hardship to the parties of withholding court consideration."
Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967),
abrogated on other grounds, Califano v. Sanders, 430 U.S. 99
(1977).

6

for standing which originate from Article III of the
Constitution, all of which must be satisfied for a federal court
to entertain a claim. To satisfy the constitutional standing
requirements, a plaintiff must show that he has (1) suffered or
will imminently suffer an injury, which is (2) fairly traceable
to the defendant's conduct and which is (3) likely to be
redressed by a favorable federal ruling on the matter. See Lujan
v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). On this
first point, a plaintiff must show that his injury is "actual or
imminent, not conjectural or hypothetical." Id. In addition, a
plaintiff who seeks injunctive relief must show that the
defendant's conduct will likely cause injury in the future. See
City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983).

### B. Rule 12(b)(6) - Failure to State a Claim

In analyzing a motion to dismiss pursuant to Rule 12(b)(6),
the court must accept as true all material allegations of the
complaint and it must construe the complaint in favor of the
plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage
Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint
should be dismissed only if, after accepting as true all of the
facts alleged in the complaint, and drawing all reasonable
inferences in the plaintiff's favor, no relief could be granted
under any set of facts consistent with the allegations of the
complaint." Id. Claims may be dismissed pursuant to a Rule

7

12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

**IV. DISCUSSION**

**A. Ripeness and Standing**

Accepting the allegations of the complaint as true and drawing all inferences in favor of plaintiffs, count I of the complaint is ripe for review. Plaintiffs have stated, which the court must accept as true, that they intend to engage in the purchase, sale, and delivery to Delaware of out-of-state wines if the applicable Delaware laws are found to be unconstitutional. (D.I 4 at ¶¶ 6-7) Their stated intent to engage in activity that is currently illegal moves plaintiffs' claim beyond the realm of a mere "hypothetical" dispute. KVUE, Inc. v. Moore, 709 F.2d 922, 927 (5th Cir. 1983). According to the Third Circuit, "the Supreme Court has held that allegations of chilling injury are not sufficient basis for standing to challenge a government action, at least when the chill is 'subjective' and not substantiated by evidence that the government action has a present and concrete effect." Salvation Army v. Dep't of Cmty. Affairs of the State of N.J., 919 F.2d 183, 193 (3d Cir. 1990) (citations omitted). In this case, however, the fact that

8

plaintiffs would be subject to criminal penalties, including imprisonment, for engaging in the challenged activity shows that the statutes have "a present and concrete effect." See, e.g., 4 Del. C. §§ 910, 901 ("Whoever . . . [n]ot being the holder of a proper and valid license, or not being so authorized by this title, sells any alcoholic liquor in this State . . . shall, in addition to the payment of costs, be imprisoned not less than 3 nor more than 6 months.").

Plaintiffs' claim meets the three requirements of the Step-Saver test. See Step-Saver Data System, Inc. v. Wyse Technology, 912 F.2d at 647. The parties' interests are adverse: plaintiffs wish to engage in behavior that is currently prohibited by the laws of the State of Delaware (which are, in turn, enforced by defendant). The mere act of engaging in that activity would subject plaintiffs to criminal liability, which qualifies as "'some form of overt conduct on the part of the [d]efendant . . . [] sufficient to form the basis of an actual controversy necessary to give the [c]ourt jurisdiction under the Declaratory Judgment Act.'" Id. at 648 (quoting Gates Energy Prods. v. Yuasa Battery Co., 599 F. Supp. 368, 375 (D. Colo. 1983)).

"The conclusivity inquiry . . . goes to whether the parties' rights will be definitively decided by a declaratory judgment." Id. at 649 n.9. Plaintiffs have targeted and challenged the specific sections of Delaware law that apply to the transactions

in which they wish to engage. A declaratory judgment from the
court on the constitutionality of those statutes would
definitively decide the Wrights' ability, under Delaware law, to
sell and directly deliver wine to Hurley.

According to Step-Saver, "[t]he utility inquiry . . . goes
not to whether the legal rights will be clarified, but to whether
the parties' plans of actions are likely to be affected by a
declaratory judgment." Id. Plaintiffs have made clear in their
complaint that they wish to engage in the currently-prohibited
conduct and that, if declaratory judgment is awarded in their
favor, they will do so. Their plans of action will certainly be
affected by the outcome of this case. Having met the three
applicable requirements, plaintiffs' complaint is ripe.

Defendant also contends that plaintiffs do not have standing
to bring their challenge because the Wrights chose not to acquire
a direct shipper's license, which would have made it legal for
them to import wine into Delaware and obviated many of the claims
in their complaint. (D.I. 6 at 14-16) Defendant avers that
plaintiffs would not have standing unless and until they had
applied for such a license and been rejected and that, even if
such an event took place, the Twenty-First Amendment would
prohibit this court from forcing defendant to grant plaintiffs a
license. (Id. at 15-16) Plaintiffs correctly point out,
however, that a direct shipper's license only allows out-of-state

10

wineries to import into Delaware "sparkling wine, still wine and
beer **that is not readily available to consumers** throughout
[Delaware]."  4 Del. C. § 526(a) (emphasis added).  Plaintiffs
wish to import many different kinds of wine into Delaware,
including those which are already easily available to the State's
residents; likewise, they want to ship wine directly to Delaware
consumers, which is not permitted under the statute.  (D.I. 9 at
3-4)  A direct shipper's license will not help them achieve
either of these goals; therefore, the fact that the Wrights have
failed to apply for such a license does not defeat their claims.

        Plaintiffs have clearly suffered an injury (a restraint on
their ability to engage in interstate commerce), and it is
"fairly traceable" to laws enacted by the State of Delaware and
enforced by defendant.  Defendant argues that plaintiffs are not
able to meet the third prong of the standing test enumerated in
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992),
because the court is not in the position to grant plaintiffs
redress.  (D.I. 6 at 15)  This is so, defendant states, because,
in balancing the Commerce Clause and the Twenty-First Amendment,
the United States Supreme Court "has left licensing matters to
the authority of the States."  (Id. at 15)  Moreover, defendant
contends that the relief requested by plaintiffs is potentially
outside the court's subject matter jurisdiction.  (Id. at 16)  If

11

the court were to declare 4 Del. C. § 703[4] invalid, defendant
claims, it "would permit the shipment of wine **and beer** into
Delaware without regulation, effectively repealing the 21st
Amendment to the extent it concerns the sale and distribution of
wine and beer in Delaware.  There is no jurisdiction in federal
court to declare the 21st Amendment unconstitutional."  (Id. at
16-17 (emphasis in original))

Defendant's arguments mirror those made by the states of New
York and Michigan in Granholm v. Heald, 544 U.S. 460 (2005), the
United States Supreme Court's most recent ruling on state
regulation of direct wine shipments.[5]  The Supreme Court found,
however, that "[t]he States' position [was] inconsistent with the
Twenty-first Amendment's history.  Section 2 [of the Amendment]
does not allow States to regulate the direct shipment of wine on
terms that discriminate in favor of in-state producers."  Id. at
476.  Moreover, the Court opined, its "more recent cases . . .

---

[4]"No manufacturer or importer shall sell, ship, transport or
deliver wine or beer within this State to any person unless in
accordance with the published regulations of the Commissioner . .
. ."  4 Del. C. § 703.

[5]According to the Court in Granholm, even though "[s]tate
laws that discriminate against interstate commerce face a
'virtually per se rule of invalidity,'" New York and Michigan
"contend[ed] their statutes [were] saved by § 2 of the Twenty-
first Amendment, which provides:  'The transportation or
importation into any State, Territory, or possession of the
United States for delivery or use therein of intoxicating
liquors, in violation of the laws thereof, is hereby
prohibited.'"  Granholm, 544 U.S. at 476 (internal citation
omitted).

12

confirm that the Twenty-first Amendment does not supersede other
provisions of the Constitution." Id. at 486. According to the
Court, its prior holdings in Bacchus Imports, Ltd. v. Dias, 468
U.S. 263 (1984); Brown-Forman Distillers Corp. v. New York State
Liquor Authority, 476 U.S. 573 (1986); and Healy v. Beer
Institute, 491 U.S. 324 (1989), "foreclose[] any contention that
§ 2 of the Twenty-first Amendment immunizes discriminatory
direct-shipment laws from Commerce Clause scrutiny." Granholm,
544 U.S. at 487-88.

Federal courts have jurisdiction to hear Commerce Clause
challenges to states' direct-shipping laws even though the
resulting rulings may implicate the Twenty-First Amendment; as a
result, this court is in a position to grant plaintiffs the
relief they seek. Because plaintiffs are suffering an actual
injury and will continue to suffer it until this issue is
decided, injunctive relief is a proper potential remedy and
plaintiffs have standing to bring their claim. Defendant's
motion to dismiss for lack of subject matter jurisdiction is
therefore denied.

## B. Failure to State a Claim

While plaintiffs' claim is ripe and they have the standing
to bring it, the crux of their argument appears to, in
defendant's words, "ignore[] geography and mix[] apples with
oranges." (D.I. 11 at 4) Count I of plaintiffs' complaint

13

alleges that certain Delaware laws violate the Commerce Clause by allowing in-state wineries to sell directly to Delaware residents, while out-of-state wineries wishing to do the same are required to go through one or more intermediaries. (D.I. 4 at ¶¶ 15-16) This misstates what plaintiffs are actually trying to accomplish: they wish to be able to sell and ship wine directly to Delaware residents' homes, a right that is not even afforded to in-state wineries.

Delaware wineries are permitted to sell directly to customers **on their premises** - should Wine Works open a facility in Delaware and obtain the proper license, it would be allowed to do the same. See 4 Del. C. §§ 512A(a), (b). Likewise, Wine Works may sell its wine directly to Delaware residents on its Pennsylvania premises. See 47 Pa. Cons. Stat. Ann. § 5-505.2(2). The key fact in the case at bar is that, under the current statutory scheme, neither in-state nor out-of-state wineries are allowed to deliver wine directly to Delaware residents' homes.[6]

---

[6]Pennsylvania, Wine Works' state of domicile, had similar laws restricting the circumstances under which out-of-state wineries could import their products into the state. See, e.g., 47 Pa. Cons. Stat. Ann. § 4-488. The United States District Court for the Eastern District of Pennsylvania recently found some of these statutes to be unconstitutional under Granholm v. Heald, 544 U.S. 460 (2005), because in-state wineries were treated more favorably. See Cutner v. Newman, 398 F. Supp. 2d 389 (E.D. Pa. 2005). In Pennsylvania, domestic wineries were allowed to accept mail and telephone orders and ship their wine to state residents; out-of-state wineries with direct shipper's licenses were limited to internet orders of no more than nine liters per person per month which had to be shipped to a

Delaware's farm winery license statute provides that "a farm winery licensee shall be authorized to sell, deliver and ship such wine . . . to persons licensed [by the State] to import wine; and to sell and ship wine to persons outside of the State." 4 Del. C. § 512A(a). The Delaware Code does not authorize in-state wineries to directly ship wine to Delaware residents' homes - they may only sell directly to such people on the premises of the winery. See id. § 512A(b).

Plaintiffs allege that the State of Delaware has violated the Commerce Clause by treating in-state wineries more favorably than those from other states. Upon reviewing the statutes in question, the court finds that both types of wineries are treated the same with respect to direct wine shipments to Delaware residents. Unlike the state statutes that were invalidated by Granholm, "the object and effect" of Delaware's laws are not "to allow in-state wineries to sell wine directly to consumers in that State but to prohibit out-of-state wineries from doing so, or, at the least, to make direct sales impractical from an economic standpoint." Granholm v. Heald, 544 U.S. 460, 466 (2005).

Even when taking the material allegations in the complaint as true and construing the complaint in plaintiffs' favor,

---

Pennsylvania liquor store, rather than the customer himself. Compare 40 Pa. C. § 11.111(a)(11) with 47 Pa. Cons. Stat. Ann. § 4-488. In the case at bar, there is no such differential treatment with respect to wine shipments to residents' homes.

plaintiffs cannot demonstrate any set of facts that would entitle them to relief and, therefore, the court grants defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

## V.    CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted and defendant's motion to stay the proceedings is denied as moot. An appropriate order shall issue.

16